UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSHUA R. MOSES, | No. 18-12380(NLH) |
| Petitioner, | |
| v. | OPINION |
| DAVID ORTIZ, WARDEN, FCI FORT DIX, | |
| Respondent. | |

APPEARANCES:

Joshua Moses
Fed. Reg. No. 55716-066
FCI Fort Dix
P.O. Box 2000, Fort Dix, N.J. 08640

 *Petitioner, Pro se*

Craig Carpenito, United States Attorney
John Stinson, Assistant United States Attorney
Office of the U.S. Attorney, District of New Jersey
401 Market Street, 4th Floor
P.O. Box 2098
Camden, NJ 08101

 *Attorneys for Respondent*

HILLMAN, District Judge

 Petitioner Joshua Moses, a federal prisoner at FCI Fort Dix, petitions for a writ of habeas corpus under 28 U.S.C. § 2241, seeking to have a state prison where he is scheduled to serve a consecutive state sentence retroactively designated as the place of his federal confinement — in effect, a concurrent

sentence.  Respondent David Ortiz, the Fort Dix Warden, opposes. For the reasons below, the Petition will be denied.

I.   BACKGROUND

On November 17, 2011, the Commonwealth of Pennsylvania arrested Petitioner and charged him with various drug offenses.[1] Martin Decl., ECF No. 9-1 ¶ 3, citing p. 10.[2]  On December 27, 2011, Petitioner posted bail and was released on house arrest. ECF No. 9-1, pp. 3-9.  On February 7, 2013, the state court vacated house arrest and electronic monitoring and set an August 26, 2013 trial date, which was later adjourned several times.[3] Id. at p. 9.

On May 13, 2014, the federal Bureau of Alcohol, Tobacco, and Firearms (ATF) arrested Petitioner and charged him with, among other things, Felon in Possession of a Weapon, 18 U.S.C. § 922(g)(1). Id. at p. 35; U.S. v. Moses, No. 14-CR-232 (E.D.P.A.).  A jury found Petitioner, still in federal custody at the time, guilty, and the federal district court sentenced

---

[1] The state records reference a "Roy R. Moses," apparently an alias.  Martin Decl. ¶ 6, citing ECF No. 9-1, p. 6, et seq. Petitioner does not dispute that the state records are his.

[2] Refers to the declaration of Bureau of Prisons Designation and Sentence Computation Center Management (DSCC) Analyst Kneyse G. Martin.

[3] The adjournments were due to the poor health of Petitioner's counsel at the time, who was later substituted.  See Pet'r Memo of Law, ECF No. 1-2, pp. 2-4.

2

him to a 102-month sentence on May 12, 2015.  ECF No. 9-1, pp. 38-42.  The sentencing court did not make any recommendation to the Bureau of Prisons (BOP) regarding concurrency.  Id.  The Designation and Sentence Computation Center Management (DSCC) computed Petitioner's sentence to begin that day and run until October 8, 2021, factoring in a prior custody credit from May 13, 2014, his arrest date on the federal charge, to May 11, 2015, the day before sentencing.  Id. at pp. 53-54.

On May 1, 2015, Petitioner was found guilty on state charges.  Id. at p. 20.  On August 19, 2015, a Pennsylvania state court sentenced Petitioner to a six-to-twelve-year state imprisonment term, to run "consecutive to any Federal Sentencing now serving."  Id. at p. 9; ECF No. 1-2, p. 5.[4]  Federal authorities temporarily transferred Petitioner to state custody on February 19, 2016 — according to Petitioner, as part of a separate investigation by the Philadelphia County District Attorney.  Id. at p. 6-8; IAD Writ, ECF No. 1-1, p. 9.  After Petitioner's return to federal custody, Pennsylvania later lodged a detainer based on Petitioner's consecutive sentence;

---

[4] According to Petitioner, the state court "never clarified how the year [of credit for time in federal custody] . . . impacted his sentence, since the court also ordered the state sentence to run consecutive[ly]," and the state court rejected Petitioner's *pro se* motion for clarification because Petitioner was represented at the time.  Id.  Based on the analysis below, the Court defers any clarification/sentencing credit determinations to the state court.

3

Petitioner asserts that this was retaliation for his refusal to cooperate.  ECF No. 9-1, p. 44.[5]

Respondent agrees that Petitioner has exhausted his federal administrative remedies.  Moran Decl., ECF No. 9-2, ¶ 4.[6]  On January 10, 2018, after unsuccessful informal resolution attempts, Petitioner filed a Request for Administrative Remedy requesting that the BOP contact the federal sentencing court and retroactively designate a state prison as the place of confinement of his federal sentence; "in effect, . . . the imposition of a retroactive concurrent federal sentence."  Id. at p. 11, citing BOP Program Statement (P.S.) 5160.5; 18 U.S.C. § 3621(b).

On January 18, 2018, DSCC denied Petitioner's request for retroactive designation, explaining that Petitioner's sentence "began on the date it was imposed, and cannot begin any earlier than this date."  ECF No. 9-1, p. 60.  After Petitioner appealed to Respondent, on January 30, 2018, Respondent denied Petitioner's application, for the same reason as the earlier appeal.  ECF No. 9-2, p. 12.  Petitioner's subsequent appeal to

---

[5] The detainer characterizes the state sentence as "6-23 years," but this appears to be an error; nothing in the state judgment or other documents indicates anything more than twelve years as an upper maximum.

[6] Refers to the declaration of Fort Dix Legal Assistant Tara Moran, attached to which are the records of Petitioner's administrative requests and appeals.

the Regional Director was also denied on similar grounds, noting consideration of P.S. 5880.28 and 5160.5 for retroactive designation requests.  Id. at pp. 13-14.  Petitioner's final administrative appeal to the Central Administrative Office was also denied, again finding that Petitioner's "federal sentence began on the date it was imposed, and cannot begin . . . earlier than this date."  Id. at pp. 15-16.  This Petition followed.

II.  ANALYSIS

Petitioner argues that: (1) the BOP abused its discretion in failing to exercise its authority under P.S. 5160.05 and 18 U.S.C. § 3621(b) to contact the federal Sentencing Court regarding the issue of concurrency to the subsequently-imposed state sentence; (2) 18 USC §3584(a) authorizes federal sentencing courts to direct sentences to run concurrently or consecutively with other sentences, whether such sentences are imposed or have yet to be imposed; and (3) the BOP's refusal to weigh the § 3621(b) factors is arbitrary, capricious, or otherwise against the law because the BOP refused to consider Petitioner's eligibility for retroactive designation or the intent of the sentencing court.  *See* 5 U.S.C. § 706(2)(A).

In opposition, Respondent argues that Petitioner essentially seeks amendment of his state sentence by this Court.  Specifically, Respondent argues that the BOP correctly calculated Petitioner's sentence, that retroactive designation

does not apply in the absence of prior state incarceration, and that Petitioner's appropriate avenue for relief is a state remedy, not habeas relief.

Petitioner's reply essentially reiterates the earlier arguments.  ECF No. 10.  Petitioner argues that the BOP has usurped the federal sentencing court's role by "weigh[ing] heavily what the state judge said rather than what the federal judge did not," resulting in a longer sentence and the consequent denial of programming, early release credits, and halfway house/home confinement.  ECF No. 10, pp. 4, 7.

"In our American system of dual sovereignty, each sovereign — whether the Federal Government or a State — is responsible for the administration of its own criminal justice system." Setser v. United States, 566 U.S. 231, 241 (2012).  "Where a defendant faces prosecution by both state and federal authorities, the 'primary custody' doctrine determines where and how the defendant will serve any resulting sentence of incarceration." Taccetta v. Fed. Bureau of Prisons, 606 F. App'x 661, 663 (3d Cir. 2015).  "[T]he first sovereign to arrest the defendant is entitled to have the defendant serve that sovereign's sentence before one imposed by another sovereign."  Id. (citing Bowman v. Wilson, 672 F.2d 1145, 1153 (3d Cir. 1982)).

However, "[a] sovereign can 'relinquish' primary custody by releasing the defendant on bail, dismissing the charges, or

granting parole." Taccetta, 606 F. App'x at 663. Here, as Respondent argues, the United States exercised primary jurisdiction as of May 13, 2014, the date of Petitioner's arrest, after Pennsylvania released Petitioner on bail. Because Petitioner was being held without bail when he was sentenced on May 12, 2015, Petitioner's federal sentence commenced that day. 18 U.S.C. § 3585(a) ("A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to ... the official detention facility at which the sentence is to be served."); Chambers v. Holland, 920 F. Supp. 618, 621 (M.D. Pa.), aff'd, 100 F.3d 946 (3d Cir. 1996) ("The federal sentence does not commence until the Attorney General receives the defendant into her custody for service of the federal sentence.").

As an initial matter, Petitioner does not dispute that May 12, 2015 marked the beginning of his federal sentence, or that the sentence was correctly calculated. Rather, Petitioner relies on 18 U.S.C. § 3584(a) and § 3621(b) to argue that the BOP should have considered and granted Petitioner's request to have his unserved state incarceration credited toward federal confinement. However, neither statute affords Petitioner a remedy. First, 18 U.S.C. § 3584(a) provides:

> If multiple terms of imprisonment are
> imposed on a defendant at the same time, or
> if a term of imprisonment is imposed on a

7

> defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively. <u>Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.</u>

(Emphasis added).

Only the last sentence is relevant, and mandates a consecutive sentence. <u>Pickett v. Warden McKean FCI</u>, 726 F. App'x 104, 106 (3d Cir. 2018) ("Because the sentencing court did not order the federal sentence to run concurrently with [petitioner's] yet to be imposed state sentence, the BOP was required to treat his federal sentence as running consecutively to his state sentence."); <u>Romandine v. United States</u>, 206 F.3d 731, 737–38 (7th Cir. 2000) ("[I]ndeed, the subject may simply be out of the judge's hands. ... A judge cannot make his sentence concurrent to nonexistent sentences that some other tribunal may or may not impose; thus the sentence is automatically consecutive.").

The sentences here were imposed at different times, by different courts, and Petitioner was not, at the time of federal sentencing, "already subject" to any state term because

8

Pennsylvania had not yet imposed a sentence. See Setser, 566 U.S. at 235 (holding that § 3584 does not apply because the "state sentence is not imposed at the same time as the federal sentence, and the defendant was not already subject to that state sentence"); McCarthy v. Doe, 146 F.3d 118, 121-22 (2d Cir. 1998) ("As defendant was neither subjected to multiple terms of imprisonment at the same time nor was he already subject to his state sentence when his federal sentence was imposed, the presumption that terms of imprisonment imposed at different times run consecutively does not apply to him.").

"[W]hen a defendant serves an initial state sentence and a subsequent federal sentence, the federal district court 'decides whether he will receive credit for the time served in state custody.'" United States v. McIntosh, 753 F.3d 388, 395 (2d Cir. 2014) (quoting Setser, 566 U.S. at 241). In, as here, the "reverse scenario, where the federal sentence is served first, ... 'the State will decide whether to give [the defendant] credit against his state sentences without being bound by what the district court said on the matter,' although the district court may, of course, make its views known." McIntosh, 753 F.3d at 395 (quoting Setser, 566 U.S. at 241) ("And if he serves his federal sentence first, the State will decide whether to give him credit against his state sentences without being bound by what the district court or the Bureau said on the matter.");

9

accord United States v. Langham, 670 F. App'x 991, 992 (10th Cir. 2016).

Thus, this Court cannot make the federal sentence, as it now stands, run concurrently with the state sentence, explicitly ordered by the state court to run consecutively.  Barden v. Keohane, 921 F.2d 476, 480, 483 (3d Cir. 1990) ("It is the federal sentencing court that lacks the power to order concurrency on the facts of this case, not the [BOP]."); United States v. Langham, 670 F. App'x 991, 992 (10th Cir. 2016) (affirming district court's conclusion that it was powerless to compel the state to serve his ten-year state sentence concurrently with his federal sentence).  Petitioner's state term was clearly consecutive.

By asking to hold that a state imprisonment term imposed and due to be served after the federal sentence can be retroactively served in federal prison, Petitioner effectively seeks a concurrent sentence and a truncated state sentence. This would require overlooking the text of § 3584(a) and disregarding the Pennsylvania court's order and, as a procedural matter, would first require the exhaustion of state remedies. 28 U.S.C. § 2254(b)-(c); Mayberry v. Petsock, 821 F.2d 179, 182–83 (3d Cir. 1987).  Here, Petitioner does not assert any such efforts beyond cursory mentions of "complaints" or Petitioner's rejected motion for clarification.  See, e.g. ECF No. 1-2, p. 4

10

("No action was taken by counsel or the court to address this complaint [regarding purported Interstate Agreement on Detainers Act]."); fn 4, supra.

Even if, as here, § 3584(a) did not mandate a consecutive sentence, the BOP would also lack discretion under § 3621 to effectively convert Petitioner's state sentence from consecutive to concurrent.  Respondent does not seem to dispute that the BOP did not consider the § 3621 factors in detail, or contact the federal sentencing court.  Rather, every one-page administrative decision contained essentially the same denial: Petitioner's federal sentence could not begin any earlier because he was in exclusive federal custody when his sentence was imposed.  See, e.g. ECF No. 9-2, p. 16.  While ambiguously phrased, the administrative decisions reach the correct conclusion: the federal sentence "cannot begin earlier" because retroactive designation can only retro-date federal incarceration served after state incarceration.

Generally, the BOP may credit state incarceration against a federal sentence if the BOP *nunc pro tunc* designates a state facility as the facility where a portion of the federal sentence was served.  See Setser, 566 U.S. at 235 ("The [BOP] may therefore order that a prisoner serve his federal sentence in a state prison.  Thus, when a person subject to a federal sentence is serving a state sentence, the Bureau may designate the state

11

prison as the place of imprisonment for the federal sentence — effectively making the two sentences concurrent — or decline to do so — effectively making them consecutive.") (emphasis in original); Barden, 921 F.2d at 480-83 (citing P.S. 5160.2 (July 7, 1989)) (noting BOP's "own recognition of its ability to make *nunc pro tunc* determinations recognizing state penal facilities as places of federal custody"); Romandine, 206 F.3d at 738 ("[T]he Attorney General could make the federal sentence run concurrently by designating the state prison as a place of federal confinement, so that the clock would start to tick on the federal sentence."); McCarthy, 146 F.3d at 123 ("In a case such as this ... where § 3584(a) does not apply, the Bureau should exercise its discretion under § 3621(b) to review petitioner's request for nunc pro tunc designation."); Petitioner is also correct that inmates are "entitled to fair treatment" on *nunc pro tunc* applications, i.e., a meaningful analysis of the § 3621 factors.  Barden, 921 F.2d 476, 483 (3d Cir. 1990) (relying on § 3621 and since-repealed 28 C.F.R. § 541.12 (1989)).

The BOP's authority for *nunc pro tunc* designation derives from 18 U.S.C. § 3621(b), which permits the BOP to

> designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or

12

> otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering—
>
> **(1)** the resources of the facility contemplated;
> **(2)** the nature and circumstances of the offense;
> **(3)** the history and characteristics of the prisoner;
> **(4)** any statement by the court that imposed the sentence--
> > **(A)** concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
> > **(B)** recommending a type of penal or correctional facility as appropriate; and
>
> **(5)** any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

The enumerated factors in § 3621(b) were "not intended to restrict or limit the [BOP] in the exercise of its existing discretion so long as the facility meets the minimum standards of health and habitability of the [BOP], but ... simply to set forth the appropriate factors that the [BOP] should consider in making the designations." Barden, 921 F.2d at 482. Nor is any one factor mandatory. Contrary to Petitioner's argument that BOP is required to consider the sentencing judge's recommendation, the judge's "decision is not controlling under the statute[.]" Barden, 921 F.2d at 483 (sentencing judge's

13

unavailability due to his death "does not relieve the [BOP] of the duty to act in an appropriate case.").[7]

As Respondent argues, however, application of the individual factors is unavailable in this case because there is no prior state incarceration for the BOP to consider, and because the Pennsylvania court expressed that the state sentence should be served consecutively. Page v. BOP, No. 12-C-0031, 2013 WL 5596799, at *5 (E.D. Wis. Oct. 11, 2013) (distinguishing Barden because the state court "specifically said that the sentences should be consecutive, not concurrent," and the federal sentencing court said "nothing to the contrary. Thus, ... affording relief would give petitioner more than he was able to get in court."); Lopez v. Ormond, No. 2:18-CV-322, 2019 WL 3365850, at *5 (E.D. Va. June 18, 2019) ("Because a nunc pro tunc designation to a state facility would necessarily require commencement of [petitioner's] state sentence, the BOP cannot unilaterally grant such a designation."); cf. Alazzam v. Hollingsworth, No. 16-3276, 2016 WL 6436810, at *1 (D.N.J. Oct. 31, 2016) (remanding to BOP Regional Director to consider § 3621(b) factors where federal court amended sentence to run concurrently with previously-imposed state sentence, and

---

[7] The federal sentencing judge has since been elevated to the Third Circuit.  ECF No. 1-2, p. 2.

Petitioner sought physical transfer to state prison to serve federal sentence).

Petitioner's argument elides the plain text of 18 U.S.C. § 3621(b), which directs BOP to consider various aspects of state confinement, including "the resources of the facility contemplated," something which BOP could not ascertain from an unserved sentence, particularly early in a lengthy federal sentence.  See United States v. Allen, 124 F. App'x 719, 721 (3d Cir. 2005) (citing Barden, 921 F.2d at 480) ("Only where the BOP specifically designates the state facility will a prisoner receive federal credit for time spent incarcerated in a state prison"); see also Fisher v. Hudson, No. 9:14-CV-0409, 2015 WL 13002032, at *3 (N.D.N.Y. June 15, 2015) (BOP considered, among other § 3621 factors, that petitioner had been sanctioned in state prison for fighting), aff'd in part and remanded on other grounds, 665 F. App'x 59 (2d Cir. 2016).  Even if the record indicated that the BOP knew the state prison contemplated for Petitioner's unserved state sentence, the resources of that facility could easily change, or be eliminated at any time.

Petitioner's request is also contrary to the terms of BOP Program Statement P.S. 5160.05, invoked by Petitioner, which is clearly intended: (1) to apply retroactive concurrency to already-served state sentences and not, as here, a sentence yet to be served; and (2) to consider the intent of a federal court,

15

not a state court, to impose a concurrent sentence. See ¶ 3(a) ("State institutions will be designated for concurrent service of a federal sentence when it is consistent with the intent of the federal sentencing court or with the goals of the criminal justice system."), ¶ 7(c) (citing United States v. Hardesty, 958 F.2d 910 (9th Cir. 1992) ("When a federal judge orders or recommends a federal sentence run concurrently with a state sentence already imposed, [BOP] implements such order or recommendation, ordinarily by designating the state facility as the place to serve the federal sentence), ¶ 9(a) ("Ordinarily, the reason for selecting the non-federal institution is that primary custody resided with the non-federal jurisdiction and the federal sentencing court intended its sentence be served concurrently with the non-federal sentence.") (January 16, 2003, emphases added, available at https://www.bop.gov/policy/progstat/5160_005.pdf).

Petitioner's remaining arguments are unavailing. Petitioner argues that his transport between federal and state facilities in 2014, while the prosecution proceeded in both jurisdictions, violated the anti-shuttling provision of the Interstate Agreement on Detainers Act, 18 U.S.C. § 1, et seq., and that no action was taken to address his complaint. ECF No. 1-2, p. 4. This appears to be a substantive challenge to the validity of his conviction, not — as Petitioner recognizes — a

16

proper challenge under 28 U.S.C. § 2241 to sentence execution. United States v. Kent, 227 F. App'x 176, 177 (3d Cir. 2007) ("A federal prisoner's challenge to the legality of his sentence and conviction must be raised in a § 2255 motion, except where the remedy under § 2255 would be inadequate or ineffective."). In any event, "various courts, both state and federal, have unanimously refused to extend the Act to reach detainees awaiting trial." United States v. Dobson, 585 F.2d 55, 59 (3d Cir. 1978).

Petitioner also characterizes the indictment as "multiplicitous." ECF No. 1-2, p. 3. Based on the letters Petitioner attaches from trial counsel, however, it appears that this refers to the multiple counts of the federal indictment, one of which was ultimately dismissed. ECF No. 1-1, p. 13 ("However, if it was [multiplicitous], the standard remedy by you not being sentenced on two separate counts really absolves them of any error in their prosecution.").

III. CONCLUSION

For the reasons above, the petition for writ of habeas corpus will be denied. An appropriate order follows.


Dated: January 27, 2021         ___s/ Noel L. Hillman_____
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.


17